LARRY D. VAUGHT, Judge
Micah Kenton Krol appeals his conviction by a Washington County Circuit Court jury of three counts of sexual indecency with a child, a Class D felony, in violation of Arkansas Code Annotated section 5-14-110(a)(2)(A) (Repl. 2013). On appeal, Krol argues that there was insufficient evidence to support his conviction because the statute should be interpreted as requiring proof that the child consciously observed the indecent exposure of the defendant's genitals. He also argues that his conviction violates the Arkansas and federal constitutions' protections against double jeopardy. We disagree with his arguments and affirm his conviction.
At trial, Austin Lewallen testified that he was working at the Walmart store in Springdale, Arkansas, on February 2, 2016. Lewallen was an asset-protection associate, and he testified that he watched Krol on the store's surveillance cameras walk up behind two young children who were alone in an aisle and lift up his shirt, exposing his penis. Krol then walked to another aisle where one child was present and again lifted his shirt and exposed his penis while standing behind the child. Lewallen testified that no one ever reported the incident to the store. Lewallen also testified that, shortly after exposing himself, Krol left the store without purchasing anything, and Lewallen used the surveillance cameras in the parking lot to obtain his license-plate number. Lewallen's coworker reported the incident to police, who later identified and arrested Krol.
Tommy Wooten testified that he is a detective for the Springdale Police Department. He stated that no one made any report to the Springdale Police Department that they or their children had seen a man expose himself at the Walmart store. The children in the video were never identified and had not been interviewed as a part of the investigation. Wooten stated that he could not tell, from the video, whether the children had seen Krol's exposed genitals. The surveillance video was introduced into evidence and played for the jury several times.
Before trial, Krol filed a memorandum of law arguing the case should be dismissed because there was no evidence that the children actually saw him expose his genitals. The State responded that our statute contains no requirement that the child view or witness the exposure, only that it be made "to" a child. The court set a pretrial hearing on the issue, but that hearing was later continued, and the record does not reflect that it ever occurred.
*588 Krol did not obtain a pretrial ruling on whether the statute requires proof that the exposure was viewed by the child.
At trial, the issue arose when Krol's counsel objected to Detective Wooten's testimony, given while watching the surveillance video, that "[h]e is exposing himself to those children." Krol's counsel argued, among other things, that the witness was "trying to suggest that this is what the jury instruction says - what the law says" and "that's a mischaracterization of the law in this case." The State responded that "that is the law in this case. That's how the statute reads." (Emphasis added.) The court ruled that "the line of questioning is going to the fact that Mr. Krol exposed his penis to these children as opposed to adults who were in the store as well," concluding that the detective could testify to what he saw on the screen and that Krol could cross-examine him on it.
The issue of what exposure "to" a child means under the statute came up again when the State asked Detective Wooten whether, based on his "common experience" and based on the angle of the child's head in the video, it was possible that the child could have noticed Krol out of her peripheral vision, turned to the left, and seen his exposed penis. Krol's counsel objected to the question as calling for speculation, and the court sustained the objection, explaining, "I believe this is something that the jurors are going to have to use their common sense to determine." Detective Wooten ultimately testified that he did not know if the children had seen Krol's exposed genitals,[1] and no witness testified that the children either had or had not seen the exposure.
After the State rested, Krol moved for directed verdict, which incorporated his memorandum of law, arguing that the statute required proof, as an essential element of the crime, that the child view the exposure. He argued that the State had failed to introduce sufficient proof on that element and that the charges should therefore be dismissed. He also argued that, if conscious observation on the part of the child victim was not an element, the court should dismiss one of the three counts of sexual indecency with a child, since Krol had lifted his shirt only twice to expose his genitals. The State argued that the statute does not contain an element requiring proof that the exposure be witnessed or viewed, that the focus of the statute was on the defendant's conduct not the child's awareness, and that three counts were appropriate because Krol had intentionally exposed his genitals to three children.
In arguing the motion for directed verdict, both sides cited numerous cases from both Arkansas and other jurisdictions to support their interpretation of the statute, and they often relied on the same cases, reaching different understandings of the fundamental holdings of those cases. For example, both sides heavily relied on Malvin v. State , 2014 Ark. App. 584, 446 S.W.3d 208, in which we affirmed a conviction for sexual indecency with a child based on the defendant's sending of a photo of his penis to a child via electronic communication. The State argued that Malvin defines "expose" as "laying open to view," which the State argued hinges only on the defendant's conduct and does not contain an awareness element on the part of the victim. The defense argued that *589 Malvin hinged on the fact that the child actually saw the defendant's genitals in the photo just as she would have seen if he had exposed himself in person. The circuit court ruled that it had read the relevant cases and was most persuaded by Malvin v. State and quoted a portion of the Malvin opinion in which we stated that "expose is defined as laying open to view.... His penis is what he exposed to [T.H.]. A photograph was simply the manner he selected for her to view it." The court then restated the elements of the crime, but regarding the element that the exposure be made "to" a child, the court did not clarify whether Malvin required proof that the child actually viewed the exposure. The court concluded by saying "[T]he State has made a prima facia case, that raises issues of fact for the jury to consider, as to all elements of the charged offense and the motion for directed verdict is denied." At the close of all evidence, Krol renewed his motion, which was again denied.
Krol also submitted proposed jury instructions that included, as a necessary element of the crime, a finding that the child viewed his exposed genitals. The court rejected his proposed jury instructions and instead gave the model version of those instructions, as advocated for by the State, which simply tracked the language of the statute, requiring the jury to determine whether Krol had exposed himself "to" a person less than fifteen years of age. Krol proffered his proposed jury instructions to the court. The jury convicted Krol of three counts of sexual indecency with a child, and this appeal follows. On appeal, Krol has challenged only the denial of his motion for directed verdict.
This court reviews a motion for a directed verdict as a challenge to the sufficiency of the evidence and will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. Williamson v. State , 2009 Ark. 568, at 3-4, 350 S.W.3d 787, 789 (citing Flowers v. State , 373 Ark. 127, 282 S.W.3d 767 (2008) ). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. , at 3-4, 350 S.W.3d at 789. In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, without weighing it against conflicting evidence that may be favorable to the appellant, and affirm the verdict if it is supported by substantial evidence. Id.
Although sufficiency-of-the-evidence cases are generally reviewed under the substantial-evidence standard, de novo review applies to questions of statutory construction. E.g. , State v. Colvin , 2013 Ark. 203, at 6, 427 S.W.3d 635, 640. In interpreting a statute, the court is to give effect to the intent of the legislature. Id. We therefore construe the statute just as it reads, giving its words their "ordinary and usually accepted meaning in common language," resorting to rules of statutory interpretation only when the language is ambiguous or unclear. E.g. , Short v. State , 349 Ark. 492, 495, 79 S.W.3d 313, 315 (2002). Additionally, statutes are construed so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute, if possible. E.g. , First Ark. Bail Bonds, Inc. v. State , 373 Ark. 463, 465, 284 S.W.3d 525, 527 (2008). "When a statute is clear ... it is given its plain meaning," and the legislative intent "must be gathered from the plain meaning of the language used." Magness v. State , 2012 Ark. 16, at 3-4, 386 S.W.3d 390, 393.
Pursuant to the rule of lenity, "penal statutes are to be strictly construed, and all doubts are to be resolved in favor *590 of the defendant." Colvin , 2013 Ark. 203, at 6, 427 S.W.3d at 640. It is well settled, however, that the rule of lenity applies only when the statute in question is ambiguous; the rule cannot be used to alter the plain meaning of a statute and is inapplicable when it would lead to an absurd result. Id. at 6, 9, 427 S.W.3d at 640-41 ; see also, e.g., Robers v. United States , 572 U.S. 639, 134 S.Ct. 1854, 1859, 188 L.Ed.2d 885 (2014) ("[T]he rule of lenity applies only if, after using the usual tools of statutory construction, we are left with a grievous ambiguity or uncertainty in the statute.").
Pursuant to Arkansas Code Annotated section 5-14-110(a)(2)(A), a person commits the offense of sexual indecency with a child if, "[w]ith the purpose to arouse or gratify a sexual desire of himself or herself or a sexual desire of another person, the person purposely exposes his or her sex organs to another person who is less than fifteen (15) years of age." Krol raises two arguments challenging the circuit court's denial of his motion for directed verdict.[2] He argues that the circuit court applied an incorrect interpretation of Arkansas Code Annotated section 5-4-110(a)(2)(A) when it denied his motion and urges us to adopt an interpretation of the statute that requires proof that the child victim consciously observed the exposure of the defendant's genitals. We decline to do so because the plain language of the statute does not contain any explicit requirement that the child observe the act. This is in contrast to other criminal statutes that contain an awareness element, such as Arkansas Code Annotated section 5-14-112(a)(2), which states that "[a] person commits indecent exposure if, with the purpose to arouse or gratify a sexual desire of himself or herself or of any other person, the person exposes his or her sex organs ... [u]nder circumstances in which the person knows the conduct is likely to cause affront or alarm." We have repeatedly rejected reading additional requirements into a statute that were not placed there by the legislature. Heape v. State , 87 Ark. App. 370, 374-77, 192 S.W.3d 281, 284-86 (2004) (rejecting, based on the plain meaning of the word "solicit" in subsection (a)(1), Heape's argument that the victim must be shown to have believed the sexual solicitation was genuine and not a mere "rhetorical question"); Renderos v. State , 92 Ark. App. 293, 293-95, 213 S.W.3d 37, 38-39 (2005) (rejecting Renderos's argument "that the statute should be read ... as to require that inducement be expressed verbally where there is evidence of unambiguous nonverbal inducement").
Both the parties and the circuit court relied on Malvin v. State , which we agree is the most informative case on this issue. In Malvin , we said that " '[e]xpose' is defined as laying open to view." Krol focuses his reliance on Malvin on the following language from the opinion: "the manner in which T.H. viewed the exposure does not take appellant's conduct outside of that prohibited by the statute.... [W]hat she saw was no different than what she would have seen had appellant pulled down his pants while standing in front of her." Malvin , 2014 Ark. App. 584, at 4, 446 S.W.3d at 210. Both Krol and the State agree that the court in Malvin was interpreting the statute's use of the word "expose," and that Malvin did not address the meaning of the subsequent phrase "to another person who is less than fifteen (15) years of age." Even so, we find Malvin 's definition of "expose" helpful in determining the issue currently before us. By substituting *591 Malvin 's definition of "expose" for the language in the statute, it reads in relevant part "lay open to view to another person who is less than fifteen (15) years of age." On its face, that reading makes clear that the legislature's intent was to focus on the conduct of the defendant in laying his genitals open to view by children. The plain language of the statute also perfectly captures the nature of Krol's actions as seen in the surveillance video that was introduced at trial.
We agree with the State's argument, made both at trial and on appeal, that the statute is aimed not at preventing children from viewing a penis but at apprehending predatory individuals who would seek out children for sexual gratification. To bolster this argument, the State cites the emergency clause to the 2016 amendment to Arkansas Code Annotated section 5-14-112(a)(2), which cites the urgent need for "protection of our children from sexual predators" and does not include any specific language about children viewing sex organs or sexually explicit material. See Act of May 23, 2016, No. 19, 2016 Arkansas Acts 448. Our interpretation of the statutory language in Malvin and our affirmation of the circuit court's ruling in the present case are in keeping with that goal.
While we note that Krol has relied heavily on out-of-state cases to support his argument that the statute should be read as requiring proof that the child witnessed the exposure of his genitals, we find those cases unpersuasive. Most of the cases he cites interpret state-specific statutory language that is different from our own.[3] Moreover, when the statutory language at issue is the same, Krol's citation to such cases demonstrates that there is a split of authority as to whether such language requires proof that the child victim witnessed the exposure.[4]
But even if we agreed with Krol's interpretation of Arkansas Code Annotated section 5-14-112(a)(2), his argument on appeal would nevertheless fail to warrant reversal because he cannot demonstrate prejudice related to the court's interpretation of the statute in its denial of his motion for directed verdict, which is the only decision he is challenging on appeal. First, we note that the denial of Krol's motion for directed verdict was not, as Krol argues, clearly and unambiguously based on the court's interpretation of the statute. Instead, it was based, at least in part, on the court's determination that the evidence presented by the State created a question of fact for the jury to decide. The court's ruling did not specify whether it was adopting Krol's or the State's preferred interpretation of the statute. It simply cited Malvin (a case on which both sides relied), restated that language of the elements as written in the statute without defining whether the word "to" required proof that the child saw the defendant's exposed genitals, and concluded that the State had made a prima facia case that presented a question of fact for the jury to decide. This ruling would have been correct under Krol's interpretation of the statute because there would still have been a question of fact as to whether the children in the video actually saw Krol expose his genitals. No witness testified conclusively on this point, and the jury would *592 have been free to utilize its own judgment in watching the surveillance video to determine that fact.[5]
Krol's second argument on appeal is that if the statute does not require proof that the child actually viewed the exposure of his genitals, it was improper to charge him with three offenses rather than two. While he exposed himself to three children, he only lifted his shirt and revealed his genitals twice. He claims that under the State's interpretation of the statute, his acts constitute only two instances of exposure, not three. To the extent that Krol argues that denial of his request to dismiss one count is a sufficiency issue, we see no error in affirming based on the interpretation of the statute discussed above, which prohibits a person from "laying [his genitals] open to view" "to another person less than fifteen (15) years of age." While Krol lifted his shirt twice, he laid his sex organs open to view to three children. As such, we affirm.
Alternatively, to the extent that he frames this issue as a double-jeopardy violation, it is unpreserved and was made prematurely. Krol raised this argument, very briefly, at the end of his motion for directed verdict, simply stating that if the court agreed with the State and found that no awareness element was required on the part of the child, "why did they charge three? Should it not have just been two?" He did not argue that charging three counts violated his right to be free from double jeopardy. Moreover, a defendant "cannot object to a double-jeopardy violation until he has actually been convicted of the multiple offenses, because it is not a violation of double jeopardy ... for the State to charge and prosecute on multiple and overlapping charges." Brown v. State , 347 Ark. 308, 317, 65 S.W.3d 394, 400 (2001). Krol raised no double-jeopardy argument after he was convicted.
Affirmed.
Virden and Gladwin, JJ., agree.

During cross-examination, Krol's counsel asked Detective Wooten if, when they previously talked, Detective Wooten had said, "It doesn't appear that the kid saw anything." Detective Wooten disagreed, stating that he did not recall saying that. Instead, he said that "I don't think any of us can say whether or not they did or didn't, but all we know is that they left from the area."

His second point, addressed later in this opinion, argues that it was error for the court to deny his request to dismiss one of the charges based on his argument that he committed two, not three, separate acts of exposure.

For example, State v. Stevenson, 656 N.W.2d 235, 239 (Minn. 2003) ; Clemens v. State , 318 Ga.App. 16, 733 S.E.2d 67, 70-71 (2012) ; and State v. Bryan, 281 Kan. 157, 130 P.3d 85, 91-92 (2006) all interpret statutes that use "in the presence of" language that is not akin to the "to" language in the Arkansas statute.

Moreover, we note that many of the statutes Krol cites as using similar "to" language actually have an additional subsection, not present in Arkansas law, requiring awareness on the part of the child. See, e.g. , State v. Jeffrey , 400 S.W.3d 303 (Mo. 2013) (interpreting Mo. Ann. Stat. § 566.083 ).

As a result, it appears that Krol did not obtain a ruling from the circuit court on the ultimate legal issue he now raises on appeal until much later in the trial when the circuit court rejected his proposed jury instructions listing observation of the genitals by the child as an essential element of the offense. While he proffered these instructions, he has not alleged on appeal that the court's denial of his proposed instructions was error. Krol therefore waived any challenge to the denial of his proposed jury instructions, which is the only instance in the record before us where the circuit court made a clear ruling as to the statutory-interpretation argument. Hill v. State , 278 Ark. 194, 201, 644 S.W.2d 282, 285 (1983). Because the denial of a motion for directed verdict is a challenge to the sufficiency of the evidence, it does not present us with the same underlying legal question as would be before us had Krol appealed the denial of his proposed jury instructions. Moreover, it is difficult to determine the prejudice Krol suffered from the court's denial of his motion for directed verdict when he does not claim any harm from the jury's ultimate use of that interpretation in deciding his guilt.